## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## NO. 5:17-CV-490

| | | |
|---|---|---|
| MICHAEL A. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| FORJAS TAURUS, S.A., TAURUS HOLDINGS, INC., | ) | |
| BRAZTECH INTERNATIONAL, LC AND OLIN | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Plaintiff Michael A. Coleman, by and through undersigned counsel, complaining of Forjas Taurus, S.A., Taurus Holdings, Inc., BrazTech International, LC and Olin Corporation, and alleges and says as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Michael Coleman is a citizen and resident of Wake County, North Carolina.

2.      Defendant Forjas Taurus, S.A. ("Defendant Forjas Taurus") is a Brazilian corporation or other business entity with a principal place of business in or around Sao Leopoldo, Brazil.

3.      Upon information and belief, Defendant Forjas Taurus is engaged in the design, manufacture, sale and distribution of firearms bearing the brand name of "Rossi," including but not limited to Rossi revolvers.

4.      Defendant Taurus Holdings, Inc. ("Defendant Taurus Holdings") is a Florida corporation organized and existing under the laws of the state of Florida, with a principal place of business in Florida.

1

5.      Upon information and belief, Defendant Taurus Holdings is engaged in the design, manufacture, sale and distribution of firearms bearing the brand names of "Rossi," including but not limited to Rossi revolvers.

6.      Defendant BrazTech International, LC, ("Defendant BrazTech") is a Florida limited company or other business entity that is organized and existing under the laws of the state of Florida, with a principal place of business in Florida.

7.      Upon information and belief, Defendant BrazTech is engaged in the design, manufacture, sale, distribution, servicing and repair of firearms bearing the brand name of "Rossi," including but not limited to Rossi revolvers.

8.      Upon information and belief, Defendant Forjas Taurus is the sole owner of Defendant Taurus Holdings.

9.      Upon information and belief, Defendant Taurus Holdings is the sole owner of Defendant BrazTech.

10.     Defendants Forjas Taurus, Taurus Holdings, and BrazTech are hereinafter collectively referred to as the "Rossi Defendants."

11.     Upon information and belief, at all times relevant hereto, each of the Rossi Defendants was acting as agent for the other Rossi Defendants, and the actions and inactions of each Rossi Defendant are attributable to the other Rossi Defendants.

12.     Defendant Olin Corporation ("Defendant Olin") is Virginia corporation organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business in the State of Missouri.

13.     Defendant Olin is engaged in the design, manufacture, sale and distribution of firearms and ammunition bearing the brand name of "Winchester."

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has specific and general personal jurisdiction over the "Rossi Defendants" pursuant to the United States Constitution and the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4.

16.     This Court has specific personal jurisdiction over the Rossi Defendants because the Rossi Defendants, directly and by and through their agents, as more fully described herein, have:

    a.  Voluntarily and purposefully operated, conducted, engaged in, or carried out a business venture in the State of North Carolina, including, but not limited to, the following: manufacturing, designing, exporting, and distributing firearms under the Rossi brand name; importing firearms under the Rossi brand name from Brazil into the State of North Carolina; distributing and selling firearms throughout North Carolina and the United States; and receiving revenue from such actions; and

    b.  Causing injury to Plaintiff within the State of North Carolina arising out of an act or omission by the Rossi Defendants outside of the State of North Carolina involving a firearm, which the Rossi Defendants placed into the stream of commerce with the expectation, intention, and purpose that it would be used by a consumer in the State of North Carolina.

17.     This Court has general personal jurisdiction over the Rossi Defendants because, as described more fully herein, the Rossi Defendants, directly and by and through their agents, have engaged in substantial and continuous activity within the State of North Carolina and within this

3

District, including, but not limited to, continuous, ongoing, and extensive exportation, sale and distribution of Rossi brand firearms within the State of North Carolina, such that general personal jurisdiction arises under the United States Constitution and N.C. Gen. Stat. § 1-75.4.

18.     This Court has specific and general personal jurisdiction over Defendant Olin pursuant to the United States Constitution and the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4.

19.     This Court has specific personal jurisdiction over Defendant Olin because Defendant Olin, directly and by and through its agents, as more fully described herein, has:

a.  Voluntarily and purposefully operated, conducted, engaged in, or carried out a business venture in the State of North Carolina, including, but not limited to, the following: manufacturing, designing and distributing firearms and ammunition under the Winchester brand name; distributing and selling firearms and ammunition throughout North Carolina and the United States; and receiving revenue from such actions; and

b.  Causing injury to Plaintiff within the State of North Carolina arising out of an act or omission by Defendant Olin outside of the State of North Carolina involving Winchester ammunition, which Defendant Olin placed into the stream of commerce with the expectation, intention, and purpose that it would be used by a consumer in the State of North Carolina.

20.     This Court has general personal jurisdiction over Defendant Olin because, as described more fully herein, Defendant Olin, directly and by and through its agents, has engaged in substantial and continuous activity within the State of North Carolina and within this District, including, but not limited to, continuous, ongoing, and extensive distribution and sale of

4

Winchester brand firearms and ammunition within the State of North Carolina, such that general personal jurisdiction arises under the United States Constitution and N.C. Gen. Stat. § 1-75.4.

21.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to Plaintiff's claims, including the explosion of Plaintiff's handgun and the injuries sustained by Plaintiff, occurred in Wake County, North Carolina.

## FACTUAL ALLEGATIONS

22.     Plaintiff Michael Coleman is a trained law enforcement officer with the Durham County Sheriff's Office and a retired servicemember with the United States Navy.

23.     Plaintiff is well-trained and experienced in the use of handguns, including revolvers.

24.     On or about December 2, 2015, Plaintiff purchased a brand new Rossi .38 Special +P revolver bearing serial number IW73146 ("Rossi Revolver") from an online vendor.

25.     On or about December 8, 2015, the Rossi Revolver was delivered to East Raleigh Jewelry and Loan and conveyed from East Raleigh Jewelry and Loan to Plaintiff in conjunction with Plaintiff's purchase agreement with the online vendor.

26.     The Rossi Defendants manufactured, designed, assembled, fabricated, produced, constructed or otherwise prepared the Rossi Revolver for sale to Plaintiff.

27.     The Rossi Defendants sold the Rossi Revolver, acting as a wholesaler, distributor or other entity engaged in the business of selling the Rossi Revolver.

28.     Each of the Rossi Defendants was a seller of the Rossi Revolver as defined by N.C. Gen. Stat. § 99B-1.

29.     Defendants Taurus Holdings and BrazTech were owned in whole or significant part by Defendant Forjas Taurus and were sellers of the Rossi Revolver.

5

30.     Each of the Rossi Defendants was a manufacturer of the Rossi Revolver as defined by N.C. Gen. Stat. § 99B-1.

31.     The Rossi Defendants imported the Rossi Revolver to the United States for the purpose of selling the Rossi Revolver to a customer in the United States.

32.     Upon information and belief, the Rossi Revolver was distributed by Defendant BrazTech to an online vendor for the purpose of presenting the Rossi Revolver for sale to the public throughout the United States, specifically including the state of North Carolina.

33.     The Rossi Revolver was designed and manufactured to safely fire .38 special caliber ammunition.

34.     The Rossi Revolver was designed and manufactured to safely fire full metal jacket and hollow point ammunition.

35.     The Rossi Revolver was designed and manufactured to safely fire standard pressure and "+P" ammunition.

36.     The Rossi Revolver was rated for the use of "+P" ammunition according to standards established and promoted by the American National Standard Institute ("ANSI") and the Sporting Arms and Ammunition Manufacturers' Institute ("SAAMI").

37.     Plaintiff purchased the Rossi Revolver for his wife, Joyce Coleman ("Mrs. Coleman"), to carry as a self-defense tool upon obtaining her concealed carry permit.

38.     On or about December 9, 2015, Mrs. Coleman attended a Concealed Carry Handgun Training Course in Raleigh, North Carolina, with Plaintiff attending to assist her and observe her training.

39.     Mrs. Coleman attempted to use the Rossi Revolver to complete the required training, but the Rossi Revolver failed to cycle properly on multiple occasions.

6

40.     The Rossi Revolver was defective in that it failed to cycle, fire or otherwise function properly.

41.     Mrs. Coleman was forced to stop using the Rossi Revolver and used another handgun to fire the rounds necessary to complete the proficiency examination of the Concealed Carry Handgun Training Course.

42.     On or about December 10, 2015, Plaintiff reported the defect to Defendant BrazTech, requested that the Rossi Revolver be inspected and repaired pursuant to the "The Rossi Lifetime Repair Policy" (hereinafter the "Repair Policy"), and shipped the Rossi Revolver to Defendant BrazTech for inspection and repair.

43.     Defendant BrazTech represented to Plaintiff that the jam was caused by a malfunction in the Rossi Revolver's trigger mechanism, which caused the cylinder to fail to rotate.

44.     Defendant BrazTech represented to Plaintiff that it had repaired the Rossi Revolver pursuant to the Repair Policy and returned the Rossi Revolver to Plaintiff.

45.     Upon receiving the Rossi Revolver from Defendant BrazTech, Plaintiff took the Rossi Revolver to a shooting range to practice firing the Rossi Revolver.

46.     Plaintiff fired a number of rounds from the Rossi Revolver without incident.

47.     While cleaning the Rossi Revolver following this session of firing the Rossi Revolver, Plaintiff observed that the firing pin had dislodged from the Rossi Revolver and fallen out.

48.     Plaintiff contacted Defendant BrazTech and again reported that the Rossi Revolver was defective.

49.     Because the Rossi Revolver was brand new and had been shown to be defective on two separate occasions, Plaintiff informed Defendant BrazTech that he did not want the Rossi

7

Revolver to be repaired and returned.

50. Instead, Plaintiff requested that Defendant BrazTech replace the Rossi Revolver by sending a new, properly functioning firearm in the same model.

51. Plaintiff informed Defendant BrazTech that he was a law enforcement officer and that having a functioning handgun while off-duty was essential to maintaining his personal safety and the safety of his family.

52. Defendant BrazTech directed Plaintiff to return the Rossi Revolver and to include a copy of his law enforcement credentials.

53. Defendant BrazTech assured Plaintiff that Defendant BrazTech's highly qualified technicians would inspect and analyze the defects associated with the Rossi Revolver.

54. Plaintiff again returned the Rossi Revolver to Defendant BrazTech, and in accordance with the request of Defendant BrazTech, Plaintiff enclosed a copy of his law enforcement credentials.

55. Contrary to Plaintiff's specific instructions, Defendant BrazTech returned the same Rossi Revolver to Plaintiff instead of providing Plaintiff with a replacement revolver.

56. When returning the Rossi Revolver to Plaintiff, Defendant BrazTech represented to Plaintiff that Defendant BrazTech had repaired the Rossi Revolver, tested the Rossi Revolver, and that the Rossi Revolver was safe for Plaintiff's use.

57. On or about to March 1, 2016, Plaintiff purchased a box of one hundred rounds of Winchester .38 Special, Full Metal Jacket Ammunition (the "Winchester Ammunition") from a Wal-Mart store located in Wake County, North Carolina.

58. Defendant Olin manufactured, designed, assembled, fabricated, produced, constructed or otherwise prepared the Winchester Ammunition for sale to Plaintiff.

59.     Defendant Olin is a manufacturer of the Winchester Ammunition as defined by N.C. Gen. Stat. § 99B-1.

60.     Defendant Olin sold the Winchester Ammunition, acting as a wholesaler, distributor or other entity engaged in the business of selling the Winchester Ammunition.

61.     Defendant Olin is a seller of the Winchester Ammunition as defined by N.C. Gen. Stat. § 99B-1.

62.     On March 9, 2016, Plaintiff brought the Rossi Revolver and the Winchester Ammunition to the Eagle 1 shooting range located in Wake County, North Carolina.

63.     Plaintiff fired a number of rounds of the Winchester Ammunition from the Rossi Revolver using a two-handed grip.

64.     Plaintiff then switched to a single-handed grip, using his right hand to fire the Rossi Revolver.

65.     After firing one round of the Winchester Ammunition with a single-handed grip without incident, Plaintiff attempted to fire another round.

66.     When Plaintiff squeezed the trigger of the Rossi Revolver to fire another round of the Winchester Ammunition, the Rossi Revolver exploded in Plaintiff's right hand.

67.     The force of the explosion split the cylinder of the Rossi Revolver into three pieces and blew off the metal strip above the cylinder.

68.     The explosion severed a portion of Plaintiff's right index finger down to the first knuckle and shattered the remaining bones in his right index finger.

69.     Plaintiff immediately applied pressure to his right hand, which was bleeding profusely.  An Eagle 1 employee rushed over to assist Plaintiff while someone else called 911.

70.     An Eagle 1 employee later found the missing portion of Plaintiff's finger and other

pieces of Plaintiff's flesh, along with pieces of the shattered Rossi Revolver and Winchester Ammunition, spread throughout the firing range.

71.     Plaintiff was transported by ambulance to Duke Raleigh Hospital, where his injuries were treated.

72.     Plaintiff suffered traumatic, painful and lasting injuries as a result of the explosion, including but not limited to permanent physical injury, mental and emotional suffering, the loss of a portion of his right index finger, scarring, disfigurement, nerve damage, and psychological trauma.

73.     Plaintiff incurred substantial medical bills and other damages as a result of the explosion, including but not limited to lost wages and various limits to his physical activities and quality of life.

74.     At all times, Plaintiff acted with reasonable care in the use and handling of the Rossi Revolver and the Winchester Ammunition.

## FIRST CLAIM FOR RELIEF
### Breach of Express Warranty (Defendants Forjas Taurus, Taurus Holdings and BrazTech)

75.     Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

76.     The Rossi Defendants made express warranties in conjunction with the Rossi Revolver.

77.     The Rossi Defendants provided a manual entitled "Rossi Firearms: Owner's Manual for Rossi Revolvers" (hereinafter the "Owner's Manual") in the packaging with the Rossi Revolver.

78.     The Owner's Manual states, "By understanding the dangers inherent in the use of any firearm, and by taking the precautions described herein, you can enjoy complete safety in the

10

use of your revolver manufactured by Taurus and branded as Rossi."

79. The statement in the Owner's Manual set forth in Paragraph 78 above constitutes an express warranty that the Rossi Revolver was safe to use, provided the user understood the dangers inherent in the use of any firearm and took the precautions described in the Owner's Manual.

80. The Owner's Manual further states, "This warranty covers any service and repair needed by any product manufactured by Taurus and branded as Rossi, and imported by Braztech, Int'l. or manufactured in the United States by Braztech, Int'l."

81. The statement in the Owner's Manual set forth in Paragraph 80 above constitutes confirmation that the express warranty covered all service and repair needed on the Rossi Revolver.

82. The Owner's Manual further states, "Before shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."

83. The statement in the Owner's Manual set forth in Paragraph 82 above constitutes an express warranty that the Rossi Revolver conformed to the Rossi Defendant's specifications and standards and that the Rossi Revolver had been carefully inspected and test fired.

84. The Rossi Revolver's packaging contained a notice confirming the terms of the Repair Policy.

85. The Repair Policy stated, "Without extending our normal warranty, we will repair, free of charge, any weapon manufactured or distributed by BrazTech Int'l LC."

86. The Rossi Revolver was a "covered product" for the purposes of the Repair Policy.

87. The Repair Policy constitutes an express warranty that the Rossi Defendants would service and repair the Rossi Revolver in a workmanlike manner.

88. The Rossi Defendants warranted that the Rossi Revolver, after its service and

11

repair, would be free of any defect and fit for operation and use as a firearm.

89.     Upon information and belief, the Rossi Defendants described and advertised their products for consumers by maintaining and utilizing a website with the domain name: www.rossiusa.com (the "Rossi Website").

90.     The Rossi Website, in reference to its .38 Special +P revolvers, stated, "These handguns are built to the same quality and reliability standards that have been part of the Rossi name for over 100 years.  Rossi offers medium and small frame revolvers in various barrel lengths—all feature deep, contoured finger grooves in the grip for a solid grasp and maximum shooting comfort.  Rossi revolvers are machined from forged steel and will routinely fire powerful .38 Special +P rounds for the lifetime of your revolver."

91.     The website of the online vendor from which Plaintiff purchased the Rossi Revolver restated the exact warranty of the Rossi Defendants, as set forth in Paragraph 90 above.

92.     The Rossi Defendants expressly warranted that the Rossi Revolver was rated for the use of +P ammunition under the standards established by ANSI and SAAMI.

93.     The Rossi Defendants expressly warranted that the Rossi Revolver would conform to the promises, representations and descriptions outlined in the preceding paragraphs.

94.     The Rossi Defendants' express warranties were part of the basis of the bargain between the Rossi Defendants and Plaintiff.

95.     The Rossi Revolver failed to conform to the promises, representations and descriptions outlined in the preceding paragraphs.

96.     On March 9, 2016, less than three weeks after Defendant BrazTech returned the Rossi Revolver to Plaintiff for the second time, and after Defendant BrazTech decided to attempt to repair the Rossi Revolver instead of replacing it with a new revolver as requested by Plaintiff,

and after assuring Plaintiff that the Rossi Revolver was safe and operable, Plaintiff relied upon the Rossi Defendants' express warranty and fired the Rossi Revolver.

97. When Plaintiff fired the Rossi Revolver, the Rossi Revolver exploded in his right hand, blowing off part of Plaintiff's right index finger and shattering the remaining bones in his right index finger.

98. The Rossi Defendants breached the express warranties in that the Rossi Revolver was not safe and malfunctioned in a manner that caused harm and injury to Plaintiff.

99. The Rossi Defendants breached their express warranties to Plaintiff in one or more of the following ways:

    a. By failing to provide the Rossi Revolver to Plaintiff free of any defect or dangerous condition;

    b. By failing to ensure that, as long as Plaintiff used proper precautions, Plaintiff could enjoy complete safety in the use of the Rossi Revolver;

    c. By failing to adequately inspect and test fire the Rossi Revolver in order to ensure that it conformed to the Rossi Defendants' specifications and standards;

    d. By failing to conduct a complete and proper inspection of the Rossi Revolver during either or both of the occasions that Plaintiff reported defects in the Rossi Revolver and returned the Rossi Revolver to Defendant BrazTech for servicing and repair;

    e. By failing to identify and repair the defective condition(s) of the Rossi Revolver during either or both of the occasions that Plaintiff reported defects in the Rossi Revolver and returned the Rossi Revolver to Defendant BrazTech for servicing and repair;

f.  By refusing to replace the Rossi Revolver with a new firearm that was free of defect, contrary to Plaintiff's demands;

g.  By failing to provide a firearm to Plaintiff that was free of any defect when it delivered the Rossi Revolver to Plaintiff after servicing of the Rossi Revolver;

h.  By failing to comply with the quality, performance and reliability standards of the Rossi Defendants or industry standards;

i.  By failing to provide Plaintiff with a firearm that was safe to fire; and

j.  By other means to be shown by evidence at trial.

100.  As a result of the Rossi Defendants' breach of express warranty, Plaintiff has been damaged in an amount to be determined at trial, in excess of $75,000.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty (Defendant Olin)

101.  Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

102.  Defendant Olin issued an express warranty on the Winchester Ammunition.

103.  Defendant Olin described and advertised its Winchester products for consumers by maintaining and utilizing a website with the domain name: www.winchester.com (the "Winchester Website").

104.  In the description of its handgun ammunition on the Winchester website, Defendant Olin stated as follows: "From SXT® to Partition Gold®, from Silvertip® to the full line of Super-X® Handgun Ammunition, and from pistols to revolvers, Winchester has set the world standard in superior handgun ammunition performance and innovation for more than a century. And to millions of hunters and shooters worldwide, the name "Winchester" means quality and performance - and the most complete, versatile and high-performance line of handgun ammunition

14

in the world. In addition, for more than a century, Winchester has been the first to answer the call to arms by producing billions of rounds of small-caliber ammunition like 9mm ammo, 40 S&W ammo, and 45 ACP ammo to the United States military and its allies. So, no matter what the sport, game or circumstances, you can always depend on every handgun cartridge in the Winchester Ammunition line to perfom [sic] - as promised."

105.    Defendant Olin expressly warranted that Plaintiff could depend on every handgun cartridge in the Winchester Ammunition to be safe, without defect and fit to be fired with a .38 Special revolver.

106.    Defendant Olin expressly warranted that the Winchester Ammunition would conform to the promises, representations and descriptions outlined in the preceding paragraphs.

107.    Defendant Olin's express warranty was part of the basis of the bargain between Defendant Olin and Plaintiff.

108.    The Winchester Ammunition failed to conform to the promises, representations and descriptions outlined in the preceding paragraphs.

109.    On March 9, 2016, when Plaintiff fired a round of the Winchester Ammunition, the Rossi Revolver exploded in his right hand, blowing off part of Plaintiff's right index finger.

110.    Defendant Olin breached its express warranty in that the Winchester Ammunition was not safe and malfunctioned in a manner that caused harm and injury to Plaintiff.

111.    Defendant Olin breached its express warranties made to Plaintiff in the following ways:

      a.   By failing to provide the Winchester Ammunition to Plaintiff free of any defect or dangerous condition;

      b.   By failing to ensure that, as long as Plaintiff used proper precautions, Plaintiff

15

could use the Winchester Ammunition in a manner that was safe and would not injure Plaintiff;

c.  By failing to comply with the quality, performance and reliability standards of Defendant Olin or industry standards;

d.  By failing to provide Plaintiff with safe ammunition; and

e.  By other means to be shown by evidence at trial.

112.    As a result of Defendant Olin's breach of express warranty, Plaintiff has been damaged in an amount to be determined at trial, in excess of $75,000.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Warranty (Defendants Forjas Taurus, Taurus Holdings and BrazTech)

113.    Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

114.    The Rossi Defendants were merchants of the Rossi Revolver

115.    The Rossi Defendants impliedly warranted to Plaintiff that the Rossi Revolver was of merchantable quality and was reasonably fit for the purposes for which it was sold.

116.    The Rossi Defendants knew, or should have known, that consumers such as Plaintiff were reasonably relying on the Rossi Defendants' skill and judgment to design, manufacture, furnish, sell, and distribute handguns that were safe to be used for the purpose of firing suitable ammunition.

117.    Plaintiff reasonably relied on such warranties.

118.    The Rossi Defendants breached the implied warranties in that the Rossi Revolver was not of merchantable quality, was in an unreasonably dangerous defective condition, and was sold to Plaintiff with a dangerous design and manufacturing defect that made it susceptible to explosion when used in a reasonable manner by Plaintiff.

16

119. The Rossi Defendants' sale of the unreasonably unsafe and dangerous product is a breach of the implied warranty of merchantability set forth in N.C. Gen. Stat. § 25-2-314.

120. The Rossi Defendants' sale of the unreasonably unsafe and dangerous product is a breach of the implied warranty of fitness for a particular purpose set forth in N.C. Gen. Stat. § 25-2-315.

121. Plaintiff notified the Rossi Defendants within a reasonable time of the breach of these implied warranties.

122. As a result of the Rossi Defendants' breach of implied warranties, Plaintiff has been damaged in an amount to be proven at trial, in excess of $75,000.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranty (Defendant Olin)

123. Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

124. Defendant Olin was a merchant of the Winchester Ammunition.

125. Defendant Olin impliedly warranted to Plaintiff that the Winchester Ammunition was of merchantable quality and was reasonably fit for the purposes for which it was sold.

126. Defendant Olin knew, or should have known, that consumers such as Plaintiff were reasonably relying on Defendant Olin's skill and judgment to design, manufacture, furnish, sell, and distribute ammunition that was safe for the purpose of being fired from a suitable firearm.

127. Plaintiff reasonably relied on such warranties.

128. Defendant Olin breached its implied warranties in that the Winchester Ammunition was not of merchantable quality, was in an unreasonably dangerous defective condition, and was sold to Plaintiff with a dangerous design and manufacturing defect that made it susceptible to explosion when used in a reasonable manner by Plaintiff.

17

129.     Defendant Olin's sale of the unreasonably unsafe and dangerous product is a breach of the implied warranty of merchantability set forth in N.C.G.S. Section 25-2-314.

130.     Defendant Olin's sale of the unreasonably unsafe and dangerous product is a breach of the implied warranty of fitness for a particular purpose set forth in N.C.G.S. Section 25-2-315.

131.     Plaintiff notified Defendant Olin within a reasonable time of the breach of these implied warranties.

132.     As a result of Defendant Olin's breach of implied warranties, Plaintiff has been damaged in an amount to be proven at trial, in excess of $75,000.

### FIFTH CLAIM FOR RELIEF
**Negligence (Defendants Forjas Taurus, Taurus Holdings and BrazTech)**

133.     Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

134.     By and through the acts and omissions of their agents, employees, and representatives, the Rossi Defendants designed, assembled, fabricated, produced, constructed, or otherwise prepared the Rossi Revolver for its sale to consumers.

135.     Upon information and belief, the actual manufacture and design of the Rossi Revolver was defective.

136.     The inadequate manufacture and design as alleged herein created an unreasonably dangerous condition that the Rossi Defendants knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm.

137.     Such defective manufacture and design caused the Rossi Revolver not to function in a manner reasonable expected by an ordinary consumer of the Rossi Revolver.

138.     At the time of its manufacture and sale, the Rossi Defendants acted unreasonably in designing, formulating or inspecting the Rossi Revolver.

18

139.    The Rossi Defendants failed to exercise reasonable care in the manufacture and design of the Rossi Revolver, thereby directly causing injury and harm to Plaintiff.

140.    In the event that Plaintiff's use of the Rossi Revolver was contrary to any instruction or warning delivered with, appearing on or attached to the Rossi Revolver's original packaging, which is denied, such instruction or warning was inadequate and the Rossi Defendants acted unreasonably in failing to provide adequate warning or instruction on the use of the Rossi Revolver.

141.    As a result of this unreasonable conduct, Plaintiff has been damaged in an amount to be proven at trial, in excess of $75,000.

## SIXTH CLAIM FOR RELIEF
### Negligence (Defendants Forjas Taurus, Taurus Holdings and BrazTech)

142.    Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

143.    Upon notification by Plaintiff that the Rossi Revolver failed to properly function and was defective, the Rossi Defendants owed Plaintiff a duty to exercise reasonable care in inspecting, servicing, and repairing the Rossi Revolver.

144.    The Rossi Defendants owed Plaintiff a duty to exercise reasonable care in determining whether to replace the Rossi Revolver with a new revolver.

145.    The Rossi Defendants were negligent by failing to exercise ordinary care for the safety of Plaintiff in the following ways:

   a.    Failing to conduct a complete and proper inspection of the Rossi Revolver during either or both of the occasions that Plaintiff reported defects in the Rossi Revolver and returned the Rossi Revolver for servicing and repair;

   b.    Failing to identify the defective condition(s) of the Rossi Revolver during

19

either or both of the occasions that Plaintiff reported defects in the Rossi Revolver and returned the Rossi Revolver for servicing and repair;

c.    Failing to repair the defective condition(s) of the Rossi Revolver during either or both of the occasions that Plaintiff reported defects in the Rossi Revolver and returned the Rossi Revolver for servicing and repair;

d.    Failing to adequately test the Rossi Revolver;

e.    Refusing to replace the Rossi Revolver with a new firearm that was free of defect, contrary to Plaintiff's demands;

f.    Failing to provide a firearm to Plaintiff that was free of any defect when it delivered the Rossi Revolver to Plaintiff after servicing it;

g.    Representing to Plaintiff that the Rossi Revolver was safe for his use; and

h.    By other means to be shown by evidence at trial.

146.    The explosion of the Rossi Revolver and the resulting injuries and damages suffered by Plaintiff are a direct result of the Rossi Defendants' negligence.

147.    As a result of the Rossi Defendants' negligence, Plaintiff has been damaged in an amount to be proven at trial, in excess of $75,000.

## SEVENTH CLAIM FOR RELIEF
### Negligence (Defendant Olin)

148.    Plaintiff hereby incorporates the other paragraphs of this Complaint by reference as if fully set forth herein.

149.    By and through the acts and omissions of its agents, employees, and representatives, Defendant Olin designed, assembled, fabricated, produced, constructed, or otherwise prepared the Winchester Ammunition for its sale to consumers.

150.    Upon information and belief, the actual manufacture and design of the Winchester

20

Ammunition was defective.

151.    The inadequate manufacture and design as alleged herein created an unreasonably dangerous condition that Defendant Olin knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm.

152.    Such defective manufacture and design caused the Winchester Ammunition not to function in a manner reasonably expected by an ordinary consumer of the Winchester Ammunition.

153.    At the time of its manufacture, Defendant Olin acted unreasonably in designing, formulating or inspecting the Winchester Ammunition.

154.    Defendant Olin failed to exercise reasonable care in the manufacture and design of the Winchester Ammunition, thereby directly causing injury and harm to Plaintiff.

155.    As a result of this unreasonable conduct, Plaintiff has been damaged in an amount to be proven at trial, in excess of $75,000.

## PRAYER FOR RELIEF

NOW THEREFORE, Plaintiff Michael A. Coleman prays the Court as follows:

1.    That, on the First Claim for Relief, Plaintiff have and recover a judgment against Defendants Forjas Taurus, Taurus Holdings and BrazTech in an amount in excess of $75,000 to be determined at trial;

2.    That, on the Second Claim for Relief, Plaintiff have and recover a judgment against Defendant Olin in an amount in excess of $75,000 to be determined at trial;

3.    That, on the Third Claim for Relief, Plaintiff have and recover a judgment against Defendants Forjas Taurus, Taurus Holdings and BrazTech in an amount in excess of $75,000 to be determined at trial;

4.     That, on the Fourth Claim for Relief, Plaintiff have and recover a judgment against Defendant Olin in an amount in excess of $75,000 to be determined at trial;

5.     That, on the Fifth Claim for Relief, Plaintiff have and recover a judgment against Defendants Forjas Taurus, Taurus Holdings and BrazTech in an amount in excess of $75,000 to be determined at trial;

6.     That, on the Sixth Claim for Relief, Plaintiff have and recover a judgment against Defendants Forjas Taurus, Taurus Holdings and BrazTech in an amount in excess of $75,000 to be determined at trial;

7.     That, on the Seventh Claim for Relief, Plaintiff have and recover a judgment against Defendant Olin in an amount in excess of $75,000 to be determined at trial

8.     That Plaintiff recover his reasonable costs in bringing this action;

9.     That Plaintiff recover interest as allowed by law;

10.    That this action be tried by a jury on all issues so triable; and

11.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 25th day of September, 2017.

MILLER MONROE & PLYLER, PLLC

By:     /s/ Jeffrey R. Monroe
        JEFFREY R. MONROE, N.C. Bar No.: 39930
        WILLIAM W. PLYLER, N.C. Bar No.: 10475
        JASON A. MILLER, N.C. Bar No.: 39923
        Attorneys for Plaintiff
        3321 Trillium Whorl Court
        Raleigh, NC 27607
        Phone: (919) 809-7346
        Fax:  (919) 516-0062
        Email: jmonroe@millermonroelaw.com
        Email: wplyler@millermonroelaw.com
        Email: jmiller@millermonroelaw.com